UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN W. CUMMING,<br>     Plaintiff, | : | |
| v. | : | CASE NO. 3:16-cv-1939 (VLB) |
| ROBERT FIELDER,<br>     Defendant. | : | May 16, 2018 |

## RULING GRANTING MOTION TO DISMISS THE AMENDED COMPLAINT

This case involves Defendant Robert Fielder's representation of Stephen Cumming regarding a child custody dispute in Connecticut Court. The Court assumes the parties' familiarity with the facts as detailed in Plaintiff John Cumming's Complaint [Dkt. 1] and Amended Complaint [Dkt. 20]. Defendant moved to dismiss the Amended Complaint on February 28, 2018 and Plaintiff did not file an opposition. [Dkt. 21.] For the reasons set forth below, this case is DISMISSED with prejudice.

### I. The Court Lacks Subject-Matter Jurisdiction Over This Suit

"Federal courts are courts of limited jurisdiction." *Gunn v. Minton*, 568 U.S. 251, 256 (2013). Subject matter jurisdiction is not waivable, and a lack of subject matter jurisdiction may be raised at any time, by a party or the court *sua sponte. See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *see also Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) ( "Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy."). If a court lacks subject matter jurisdiction, it must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3). A "district

1

court must take all uncontroverted facts in the complaint [ ] as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). However, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings." *Id.* "In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*

Under the *Rooker-Feldman* doctrine, federal district courts may not exercise subject matter jurisdiction over suits that are, in substance, appeals from state court judgments. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-15 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Gonzalez v. Ocwen Home Loan Servicing*, 74 F. Supp. 3d 504, 513 (D. Conn. 2015) (stating the *Rooker-Feldman* doctrine depends on "the causal relationship between the state-court judgment and the injury of which the party complains in federal court," not the similarity between the claims) (quoting *McKithen v. Brown*, 481 F.3d 89, 97-98 (2d Cir. 2007)). The doctrine is limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).

John Cumming alleges Defendant failed to adequately represent Stephen Cumming in his child custody proceedings, and alleges Stephen Cumming has suffered injury due to his inability to afford the child support and custody-related

2

expenses he now owes under the Connecticut Superior Court's decision. However, Plaintiff had the opportunity to raise concerns about his ability to pay child support or to afford custody-related expenses in Connecticut Superior Court, and was in fact required to notify the Connecticut Superior Court of his financial status.  *See* Conn. P.B. §§ 25-30, 25a-15 (requiring parties to a child custody proceeding to provide the court with a sworn statement of current income, expenses, assets and liabilities); JD-FM-6-long; JD-FM-6-short (*available at* https://www.jud.ct.gov/webforms/default.aspx?load_catg=Family) (financial affidavits to alert the Connecticut Superior Court of a party's financial status).

Plaintiff's claims are "inextricably intertwined" with the propriety of his custody obligation, which has already been decided by the Connecticut Superior Court.  Accordingly, the *Rooker-Feldman* doctrine prevents the Court from exercising subject matter jurisdiction over this case. *See Mitchell v. Fishbein*, 377 F. 3d 157, 165 (2d Cir. 2004); *Holland v. New York*, 63 F. App'x 532, 533 (2d Cir. 2003) (affirming district court's dismissal for lack of subject matter jurisdiction of case involving allegations arising from contested divorce suit); *Weiss v. Weiss*, 375 F. Supp. 2d at 18 (ruling the *Rooker-Feldman* doctrine barred the district court from considering ex-wife's tort claims).

Even if the Rooker-Feldman doctrine did not bar the Court from entertaining this attempted challenge to a state court judgment, the Court would be barred from evaluating Stephen Cumming's custody obligation under the domestic relations doctrine.  The domestic relations doctrine "divests the federal courts of power to issue divorce, alimony, and child custody decrees."

3

*Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). The doctrine recognizes that "state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees." *Id.* at 704.

Plaintiff's repeated reference to Stephen Cumming's child custody obligations strongly suggests that his claims either seek reversal of state court rulings or are better addressed in state court. *See Weiss v. Weiss*, 375 F. Supp. 2d 10, 15 (D. Conn. 2005) (stating that the decision for federal courts to disclaim jurisdiction in domestic relations cases "is statutory, not constitutional, in nature" and "rests on the history of the diversity jurisdiction statute, 28 U.S.C. § 1332, as well as 'sound policy considerations' "); *U.S. Life Ins. Co. v. Marshall*, No. 3:13-CV-00380 (VLB), 2014 WL 2040389, at *5 (D. Conn. May 16, 2014) (acknowledging that "federal courts 'should further abstain from exercising jurisdiction over cases on the verge of being matrimonial in nature") (quoting *Hamilton v. Hamilton–Grinols*, 363 Fed.Appx. 767, 769 (2d Cir. 2010)). The Court is precluded from exercising jurisdiction under both the Rooker-Feldman doctrine and the domestic relations exception. *See Hamilton*, 363 F. App'x at 769.

II. <u>The Amended Complaint Fails to Remedy the Deficiencies of the Initial Complaint</u>

In addition, the Amended Complaint fails to remedy the deficiencies in the initial Complaint. As explained in the Court's prior Memorandum of Decision dismissing the Complaint [Dkt. 18], Plaintiff cannot establish standing without

4

alleging that he suffered a concrete and particularized injury personal to himself as a result of the alleged breach of contract in order to assert standing.

As explained in the Court's prior decision, an individual who is neither a party to an agreement nor an intended beneficiary of the agreement lacks prudential standing to sue under the agreement. *Beckford v. Bayview Loan Serv., LLC*, 2017 WL 2588084, at *7 (D. Conn. June 14, 2017) (finding a mortgage borrower lacked standing to challenge the assignment and securitization of the mortgage); *FCM Grp., Inc. v. Miller*, 300 Conn. 774, 797 (2011) (finding a contractor who contracted with a homeowner could not sue the homeowner's wife for breach of that contract, and relying on the fact that the contract did not mention the wife and was not signed by the wife); *Gateway Co. v. DiNoia*, 232 Conn. 223, 231 (1995) (emphasis in original) (holding a non-party to a contract may only maintain a breach of contract claim if the parties to the contract "intended to create a *direct obligation* from one party to the [contract] to the third party").

This rule remains consistent in the context of an agreement creating an attorney-client relationship. An attorney's "allegiance is to his client, not to the person who happens to be paying for his services," even if the attorney also keeps the person providing payment "informed about the progress of the case." *Novella v. Hartford Acc. & Indem. Co.*, 163 Conn. 552, 573 (1972) (finding an attorney for insureds owed a duty to the insureds, not the insurer, even though the insurer paid for the attorney's representation); *see also Higgins v. Karp*, 239 Conn. 802, 810 (1997) (recognizing the "well settled" principle that "an attorney's allegiance is to his client, not to the person who happens to be paying for his

5

services," which was first recognized outside the insurance context and is not exclusive to it); *Krawczyk v. Stingle*, 208 Conn. 239, 244 (1988) ("As a general rule, attorneys are not liable to persons other than their clients for the negligent rendering of services."); *Simpson v. United States*, 224 F. Supp. 3d 180, 185 (D. Conn. 2016) (VLB) (finding "[o]nly the client . . . has a legal or equitable right, title or interest in the subject matter of the controversy, namely the efficacy of the professional services rendered" in the context of a medical malpractice claim). "An attorney-client relationship is established when the advice and assistance of the attorney is sought and received in matters pertinent to his profession." *DiStefano v. Milardo*, 276 Conn. 416, 422 (2005). "The burden of establishing an attorney-client relationship is on the party claiming the existence of such a relationship" and may be evidenced by "a retainer agreement or a contract." *Id*.

An exception allows a non-client to hold an attorney liable for claims regarding services rendered when the "plaintiff can demonstrate that he or she was the intended or foreseeable beneficiary of the attorney's services." *Krawczyk*, 208 Conn. at 244 (finding an attorney for a decedent who was charged with arranging for timely execution of estate planning documents had no duty to the intended beneficiaries of the estate, and the attorney could not be liable to them for alleged negligent delay in execution of the estate planning documents). Unless the "primary or direct purpose of the transaction was to benefit the third party," public policy militates against recognizing a non-party to a contract's right to sue under that contract. *Id*. at 245-45. Public policy concerns include "the burden on the legal profession that would result from the imposition of liability"

and "the potential of interfering with the ethical obligations owed by an attorney to his or her client." *Id.*

The Amended Complaint, like the Complaint, does not allege that John Cumming was a party to the Retainer Agreement or the intended beneficiary of the Retainer Agreement, or that Defendant owed John Cumming a direct obligation under the Retainer Agreement. John Cumming has not alleged that he has standing to bring this suit.

Nor does the fact that Stephen Cumming is plausibly named as an additional plaintiff in the Amended Complaint save it from dismissal. As a preliminary note, while both John and Stephen Cumming signed the Amended Complaint, the case caption to the Amended Complaint lists only John Cumming as a Plaintiff, and the Amended Complaint refers to John Cumming as "<u>The Plaintiff</u>." [Dkt. 20 at 1-3 (emphasis added).] Nevertheless, the Court construes the Amended Complaint as naming Stephen Cumming as an additional Plaintiff.

However, Stephen Cumming has not appeared in this action, and John Cumming, a *pro se* party, cannot represent him. 28 U.S.C. § 1654 (1982) ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel"); *Berrios v. N.Y.C. Housing Auth.*, 564 F.3d 130, 132 (2d Cir. 2009) (stating a non-attorney may not represent anyone other than him or herself); *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997) (stating a plaintiff "may not appear *pro se* in the cause of another person or entity"). While the medical records attached to the Amended Complaint state Stephen Cumming is epileptic, they do not establish that he is incompetent. [Dkt. 20-1.] Even if

Stephen Cumming were legally incompetent, John Cumming would still be prohibited from representing him in federal court. *Berrios*, 113 F.3d at 133-34 (stating that, while an incompetent party may have a general guardian, next friend, or other fiduciary, if that guardian is not an attorney, the guardian must be represented by an attorney in order to litigate in federal court).

Accordingly, even if the Court could exercise subject-matter jurisdiction over this case, the Amended Complaint would have to be dismissed as to both John Cumming, who lacks standing, and Stephen Cumming, who had not appeared in this case and cannot be represented by a non-attorney.

III. Conclusion

For the foregoing reasons, the Motion to Dismiss the Amended Complaint is GRANTED. The Court has already granted the Plaintiff an opportunity to amend his pleadings to state a viable claim and has proven unable to do so. The Court finds an opportunity for further amendment would be futile and dismisses this case with prejudice. *See Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (recognizing that while Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be "freely given when justice so requires," courts have discretion to deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party"). The Clerk is directed to close this file.

**SO ORDERED this 16th day of May 2018, at Hartford, Connecticut.**

                                              _____/s/_____
                                              **Vanessa L. Bryant**
                                              **United States District Judge**